FILED

2026 OCT 15 PM 1:37

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY ___axx___

Reuven L. Cohen (Bar No. 231915)
Email: rcohen@cohen-williams.com
Michael V. Schafler (Bar No. 212164)
Email: mschafler@cohen-williams.com
Joseph (Yusuf) Saei (Bar No. 321341)
Email: ysaei@cohen-williams.com
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 232-5160
Facsimile: (213) 232-5167

Attorneys for Defendant NATHAN YOUNG

COHEN WILLIAMS LLP

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NATHAN YOUNG and DAVID YOUNG,<br><br>Defendants. | Case No. 2:26-mj-05996-DUTY<br><br>**DEFENDANT NATHAN YOUNG'S INITIAL MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**<br><br>*Filed concurrently with Declaration of Reuven L. Cohen and Defendant Nathan Young's Motion for Release for Fourth Amendment and Rule Five Violations and for Evidentiary Hearings and Hearing RE Dismissal* |

COHEN WILLIAMS LLP

## I. INTRODUCTION

Nathan Young ("Nathan") is the objective antithesis of a flight risk. For the better part of a year, Nathan—through counsel—did the opposite of what a man planning to flee would do. He told the government he knew it was investigating him. He offered to surrender his passport. He offered to discuss bond and to post property. He offered the government unfettered access to his facilities and offered to accept service of its subpoenas. He asked, again and again, simply to talk. The government refused every overture, told counsel it was "not in a position to share any information," and then, at 6:00 a.m. on October 13, 2026, sent agents to arrest his 71-year-old father, Defendant David Young ("David," collectively with Nathan, "the Youngs"). (Declaration of Reuven R. Cohen ("Cohen Decl."), Ex. A at 1, Ex. B at 6.)

When the agents came to Nathan's apartment complex that same morning, Nathan did not run. Within fifteen minutes of a single phone call from his counsel, he walked down to the lobby of his building and self-surrendered without incident. (*Id.* Ex. B at 5-6.) Despite that, and the early hour, the government did not bring the Youngs before this Court for a timely hearing. Rather, the government took them to the Metropolitan Detention Center and held them overnight—with no arrest warrant, no charging document, no arraignment, and no purpose—telling undersigned counsel that a charging document would arrive "sometime tomorrow." (*Id.* at 2.) The government held the Youngs a second night, after failing to calendar them for a second day.

Undersigned counsel represents Nathan, and previously represented both of the Youngs in civil litigation filed in this district in 2024. When Nathan learned of a likely criminal investigation in 2025, he directed counsel to engage in a constructive dialogue with the government.

A man who takes this approach and spends months offering prosecutors his passport does not flee. Under 18 U.S.C. § 3142, the Bail Reform Act commands release on personal recognizance or "the least restrictive further condition, or combination of conditions," that will reasonably assure Nathan' appearance. 18 U.S.C.A. § 3142(c)(B).

Given the highly unusual circumstance here—a refusal to share charging information (that apparently did not exist) the day of the arrest, and a detention with no plan—there can be no justification for, let alone presumption of, detention here. Nathan should be released on reasonable conditions.

## II. NATHAN IS NOT A FLIGHT RISK

Nathan is not a flight risk; he is a man with every reason to stay and fight. Nathan was born in Santa Monica in 1986 and attended regional schools including Franklin Elementary. He has resided continuously in Los Angeles since he entered the hospitality industry in late 2014 or early 2015. Since about October 2023, he has had a stable residence at the condominium complex where he self-surrendered Tuesday morning. Moved to help others, he built and operated substance use disorder ("SUD") treatment facilities and businesses. His aim was to spend time making a positive difference in the world.

Nathan is unmarried and has no children, but he is a consummate family man. He visits twice a week with his sisters who also live in Los Angeles and who between them have seven children that Nathan spends time with regularly. Nathan and his family eat dinners together on Friday for Shabat and have Saturday lunches. They celebrate all the Jewish holidays together and take an annual trip to La Jolla each year.

The conduct that matters most for present purposes is what Nathan did once he learned he was under investigation: nothing that resembles flight. He and his father stayed. They worked on a case Aetna filed against them in this district in 2024, relating to the Youngs' operation of several SUD treatment facilities. *Aetna v. Young,* Case No. 2:23-cv-09654 (C.D. Cal., filed Nov. 14, 2023). Despite incendiary allegations by the insurance behemoth and exposure of 40 million dollars plus treble damages and attorney's fees and sweeping RICO allegations (which invariably found their way into the government's 11th hour, post arrest Complaint), the case settled amicably under confidential terms, which counsel can discuss *in camera* with federal government employees or officials. Both of the Youngs produced copious records in the civil



COHEN WILLIAMS LLP

litigation. David sat for multiple days of deposition including as a person most knowledgeable and in his individual capacity, and Nathan also sat for deposition for a full day. The Youngs did not hide. They litigated in this federal district, and true to form, Nathan surrendered the moment he was asked.

To the extent the government may suggest Nathan is an "economic danger," that is not a lawful basis for detention here. The Ninth Circuit has squarely held that it is "not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness[,]" because that reading "would render meaningless 18 U.S.C. § 3142(f)(1) and (2)." *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003). In any event, even where economic danger can be considered, "it is particularly important that the government proffer more than the fact of a serious economic crime that generated great sums of ill-gotten gains"; "[m]erely having access to significant funds is not enough. . . ." *United States v. Sauls*, No. 3:16-CR-00560-JMC-9, 2018 WL 1755500 at 5 (D.S.C. Apr. 12, 2018).

The investigation in this matter began long ago—at the *latest* November of 2025. Aetna witnesses testified that the FBI had been requesting the Young's claims data since December 2021, almost five years before Nathan's arrest. The government's own conduct thus undercuts any claim of harm or urgency. The authorities knew of no risk serious enough to detain the Youngs for five years. It declined counsel's offers on passport and bond cooperation over the last year—after Aetna's explosive case settled—and it chose a disruptive and costly arrest with more than a dozen agents and unnecessary detentions at MDC instead.

## III. FACTS UNDERPINNING NATHAN'S ARREST

Nathan has known of this federal investigation for nearly a year, and he never fled. On November 14, 2025, in the *Aetna* matter, undersigned counsel received from the plaintiff, Aetna, a grand jury subpoena directed to Aetna and issued by this Court, on the application of the United States on November 13, 2025. (Cohen Decl. ¶5, Ex. C; *see also Aetna v. Young*, Case No. 2:23-cv-09654 (C.D. Cal., filed Nov. 14, 2023.) As the




COHEN WILLIAMS LLP

Youngs told the court in a motion to stay the civil action pending resolution of the criminal investigation, "[o]n November 14, 2025, Young Defendants learned of an ongoing criminal investigation when Aetna's counsel forwarded a grand jury subpoena" to undersigned counsel's office, which at that time represented both of the Youngs. *Aetna v. Young*, ECF No. 137-1, at 8. In the eleven months that followed, Nathan remained based in Los Angeles and litigated against Aetna. The case ultimately settled in April of this year.

Rather than flee, Nathan repeatedly asked the government to proceed in an orderly manner. Beginning June 1, 2026, counsel asked the government "to set up a time to speak with you concerning our client Nathan Young." (Cohen Decl., Ex. A at 3.) When the government asked counsel to expand on what they wished to discuss, counsel listed, among other things, "whether we should take custody of our client's passport," "whether the government would like our client's cooperation," and "whether the government would like to have complete, unfettered access to our client's facilities." (*Id.* at 1.) The government replied that it was "not in a position to share any information, but will let you know if that changes." (*Id.*)

On July 22, 2026, counsel wrote the government a detailed letter, explaining that every prior attempt "to have a normal, professional dialogue regarding this matter" had been "unsuccessful[,]" and asking "frankly, in the interest of justice" for "a simple telephone conference (*i.e.*, a phone call)." (Cohen Decl., Ex. D at 1.) On the very issue now before the Court—bond—counsel wrote that the defense "would be happy to take possession of Mr. Young's passport[,]" noting that counsel had "done this frequently over the years with both your Office as well as other offices around the country." (*Id.*) Counsel offered to "discuss the parameters of any prospective bond conditions, including, among other things, the posting of property," and rejected in advance any theory that Nathan was a flight risk "notwithstanding his knowledge of this years-long investigation, his lack of criminal history, his defenses to any suggestions of criminality, and his intention to litigate any prospective charges." (*Id.*) Counsel "again offer[ed] to accept



COHEN WILLIAMS LLP

service of government subpoenas as to any facilities connected to Mr. Young and/or facilitate walkthroughs of the facilities for agents[,]" so as to "mitigate the extraordinarily deleterious, real-world impact that FBI/IRS door knocks are having on real-world patients being treated for real-world substance use disorder at these facilities." (*Id.*) If the government would not speak at all, counsel asked only that it "put us in touch with your supervisor." (*Id.* at 2.) The government agreed to a call at 4 p.m. the following Tuesday. (Cohen Decl., Ex. B at 7-8.) But the government refused to engage on the merits, and no passport surrender, bond, or self-surrender arrangement ever followed.

Instead, at about 6:00 a.m. on October 13, 2026, numerous agents executed a raid of the Young family home, arresting David, Nathan's 71-year-old father, inside. (Cohen Decl., Ex. A at 6.) As for Nathan, his surrender took fifteen minutes to arrange. At 7:38 a.m., counsel asked the prosecutors, "do you need our client, Nathan Young, to self-surrender? We can make that happen this morning if you'd like." (*Id.* at 6.) At 7:48 a.m., the government answered that if Nathan "wishes to self-surrender, please tell him to come down to the lobby of his apartment complex. Our agents are waiting for him there." (*Id.*) At 7:53 a.m., counsel confirmed, "Nathan is heading down to the lobby now." (*Id.* at 6.) He surrendered without incident.

The government should then have brought the Youngs to this courthouse before the duty magistrate judge. It did not. By 9:58 a.m., counsel confirmed that the Youngs were "not in the federal building" and by 11:09 a.m., the government replied that they were "at MDC." (*Id.* at 4-5) Counsel pressed: "Why are they at MDC? They need to be here so that we can get them on calendar." (*Id.* at 4.) That afternoon, still without a charging document, counsel asked why the Youngs "weren't brought to court today." (*Id.* at 2.) The government said that the charging document would arrive "sometime tomorrow" and that the Youngs would "be arraigned then." (*Id.*) The result is a pointless night in custody. Among the items the agents seized in a separate raid on Nathan's sister yesterday morning was Nathan's United States passport—which counsel had offered to surrender months earlier.

COHEN WILLIAMS LLP

COHEN WILLIAMS LLP

## IV. CONCLUSION

Nathan Young has shown this Court exactly who he is. He knew he was under investigation, offered to surrender his passport and post bond, and never fled. When the agents arrived at the doorstep, he and his father submitted without incident. The Youngs are family men with deep roots here, and they have every reason to stay and defend themselves.

Dated: October 15, 2026

Respectfully submitted,
**COHEN WILLIAMS LLP**

By: [signature]
Reuven L. Cohen
Michael V. Schafler
Joseph (Yusuf) Saei
Attorneys for Defendant NATHAN YOUNG

COHEN WILLIAMS LLP

# PROOF OF SERVICE

***United States of America v. Nathan Young, et al.***
**Case No. 2:26-mj-05996-DUTY**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 724 South Spring Street, 9th Floor, Los Angeles, CA 90014.

On October 15, 2026, I served true copies of the following document(s) described as **DEFENDANT NATHAN YOUNG'S INITIAL MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE** on the interested parties in this action as follows:

Haoxiaohan Cai
Siobhan Namazi
Erika Suhr
Assistant United States Attorney
United States Attorney's Office
312 N. Spring Street, Suite 1100
Los Angeles, CA 90012
Email: haoxiaohan.cai@usdoj.gov
Email: siobhan.namazi@usdoj.gov
Email: erika.suhr2@usdoj.gov

*Attorneys for Plaintiff*
*United States of America*

Charles Snyder
Kendall Brill Kelly
818 W. 7th Street, Suite 990
Los Angeles, CA 90017
Email: csnyder@kbkfirm.com

*Attorney for Defendant*
*David Young*

**BY EMAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from email address wcarpenter@cohen-williams.com to the persons at the email addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 15, 2026, at San Dimas, California.

Wendy M. Carpenter